Russel Cole HARTY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–06–00011–CR.

Court of Appeals of Texas,
Texarkana.

Submitted June 21, 2007.

Decided July 12, 2007.

Mary Ann Rea, Longview, for appellant.

Wade Tyler Wilson, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

■ Russel Cole Harty had previously pled guilty to indecency with a child and had received community supervision.[1] The terms of that community supervision required that Harty, among other things, avoid "injurious and vicious habits"; and "not possess any printed, photographed, or recorded material" that could be used for his "deviant sexual arousal." Those terms also required that Harty "execute releases of confidential information" allowing free exchange of information between his sex-offender therapist and the corrections department, that Harty submit to periodic polygraph examinations, and that "the polygraph evaluation report shall be provided to your sex offender therapist only." As required under the terms of his community supervision, Harty submitted to a scheduled polygraph examination. During the pre-examination interview with the polygraph examiner, Harty admitted to numerous violations of his community supervision. After being notified of Harty's admissions, the State moved to revoke Harty's community supervision and was successful.[2]

1. After Harty's guilty plea, a jury assessed his punishment at ten years' imprisonment and recommended the sentence be probated. The trial court placed Harty on community supervision for a term of ten years.

2. At the revocation hearing, the State presented evidence of Harty's admissions. Gory Loveday, Harty's polygraph examiner, testified that Harty had admitted to masturbating in public, masturbating behind the counter at work while children under the age of seventeen were present in the store, and possessing printed and recorded pornographic material. Harty mentioned that, on one occasion, a sixteen or seventeen-year-old girl may have seen him masturbating. The State did not introduce the results of the polygraph test, which would be inadmissible, *see Robinson v. State*, 550 S.W.2d 54, 59 (Tex.Crim.App.

Before the revocation hearing was held, Harty had filed a motion to suppress the evidence of his admissions to the polygraph examiner, alleging that those statements were involuntary. At the revocation hearing, Harty again raised the voluntariness issue. Harty indicated a desire to testify for the limited purpose of determining the voluntariness of his statements. The trial court ruled that, even if Harty took the stand for the limited purpose of voluntariness, he would be subject to cross-examination for issues relating to credibility including "other prior admissions." Harty then declined to testify.

As a result of the hearing, the trial court found that Harty had violated several provisions of his community supervision, revoked Harty's community supervision, and sentenced Harty to ten years' imprisonment.

On appeal, Harty raises two issues. Harty claims the trial court erred in ruling that he could be cross-examined concerning prior admissions even if he testified for a limited purpose. In addition, Harty argues the trial court erred in finding the statements were voluntary because his statements were made based on the State's false representation that Harty's statements to the polygraph examiner would be disclosed only to Harty's therapist.

We affirm the trial court's judgment because we hold that (1) no error as to the scope of cross-examination of Harty has been preserved, and (2) no deception by the State was such as would either offend due process or likely induce an untrue statement from Harty.

1977), but, instead, introduced admissions that Harty made during the course of the pretest interview. A party's admission made during the course of a polygraph examination is generally admissible. *Marcum v. State,* 983

*(1) No Error as to the Scope of Cross–Examination of Harty Has Been Preserved*

In his first point of error, Harty claims the trial court erred in ruling that, if Harty testified concerning the voluntariness of his admissions to the polygraph examiner, Harty could be cross-examined concerning admissions he had made on prior occasions. We disagree. The trial court's explanation of the ruling is, in the abstract, correct. Further, even if the trial court's ruling could be interpreted as allowing the State to inquire into the truth of the admissions beyond just cross-examining Harty to test his credibility, no error has been preserved for our review.

■■■ "[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction." *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). When the voluntariness of a statement is challenged, the Due Process Clause requires the trial court to make an independent determination in the absence of the jury as to whether the statement was voluntarily made. *Id.* at 380, 84 S.Ct. 1774. Article 38.21 of the Texas Code of Criminal Procedure provides: "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005); *Hough v. State,* 929 S.W.2d

S.W.2d 762, 766 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *Hoppes v. State,* 725 S.W.2d 532, 536 (Tex.App.-Houston [1st Dist.] 1987, no pet.).

484, 488 (Tex.App.-Texarkana 1996, pet. ref'd).[3]

In Texas, the scope of an ordinary cross-examination is not limited to just the matters covered during the direct examination. *Felder v. State*, 848 S.W.2d 85, 99 (Tex.Crim.App.1992). A witness may be cross-examined on any matter relevant[4] to any issue in the case, including credibility. *Id.* Also, generally, a defendant may not testify for a limited purpose at a trial on the merits. *Gonzales v. State*, 160 Tex.Crim. 548, 272 S.W.2d 524, 525 (1954); *Martin v. State*, 707 S.W.2d 243, 245 (Tex.App.-Beaumont 1986, pet. ref'd).

There are exceptions, though, to the general rule. A defendant may testify at a pretrial hearing on the issue of voluntariness and limit the scope of cross-examination. *See* TEX.R. EVID. 104(d); *see also Crosson v. State*, 36 S.W.3d 642, 645 (Tex. App.-Houston [1st Dist.] 2000, no pet.). "If a defendant testifies pretrial, 'the scope of cross-examination [is] limited to the issue of voluntariness, and the fact that the defendant testifies [pretrial] does not compel him to take the stand at the trial on the merits.'" *State v. Terrazas*, 4 S.W.3d 720, 725 n. 3 (Tex.Crim.App.1999) (quoting Note: *Procedure—Defendant Entitled to Hearing on Voluntariness of Confession Before It Goes To the Jury*, 43 Tex. L.Rev. 396, 396–99 (1965)); *see Davis v. State*, 961 S.W.2d 156, 160–61 (Tex.Crim.App.1998) (Baird, J., concurring).

---

**3.** The State argues that Article 38.22, Section 5 of the Texas Code of Criminal Procedure allows voluntary statements relevant to credibility to be used in cross-examination. Section 5 provides, "Nothing in this article precludes the admission ... of a voluntary statement whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness." *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 2005). The State also cites several cases in support of this proposition, but fails to explain what principle the cases are being cited for. *See United States v. Havens*, 446 U.S. 620, 627, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (illegally seized evidence was properly admitted to impeach any aspect of defendant's testimony, and impeachment was not limited to a direct contradiction of a particular statement made during direct testimony); *Harris v. New York*, 401 U.S. 222, 226, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (credibility was appropriately impeached by use of earlier conflicting statements which were inadmissible under *Miranda [v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)]); *Lykins v. State*, 784 S.W.2d 32, 35–36 (Tex.Crim.App.1989) (statements made in violation of Article 38.22 could be used for impeachment); *Garza v. State*, 18 S.W.3d 813, 826 (Tex.App.-Fort Worth 2000, pet. ref'd) (Sixth Amendment does not bar use of a defendant's voluntary statement for impeachment where defendant testifies at trial,

even if impeaching statements were elicited in violation of defendant's Sixth Amendment right to counsel). None of the above cases concern evidence when a defendant testifies for the limited purpose of establishing voluntariness of a statement. Article 38.22 is limited to statements made during custodial interrogation. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, §§ 2–3 (Vernon 2005); *Yarborough v. State*, 178 S.W.3d 895, 900 (Tex. App.-Texarkana 2005, pet. ref'd); *May v. State*, 139 S.W.3d 93, 100 (Tex.App.-Texarkana 2004, pet. ref'd). Harty does not argue he was in custody at the time he made the admissions at issue. The quoted language from Section 5 allows voluntary statements, whether or not the result of custodial interrogations, for impeachment purposes. *See Lykins*, 784 S.W.2d at 36; *Hypolite v. State*, 985 S.W.2d 181, 188 (Tex.App.-San Antonio 1998, no pet.). The article does not require that such statements be otherwise admissible, but provides only that Article 38.22 should not be interpreted as precluding the admission of such statements.

**4.** A witness may not be cross-examined about a subject that is collateral and irrelevant to the main issues on trial unless the witness gratuitously testifies as to the matter that is irrelevant or collateral. *Bates v. State*, 587 S.W.2d 121, 143 (Tex.Crim.App.1979); *Booker v. State*, 929 S.W.2d 57, 66 (Tex.App.-Beaumont 1996, pet. ref'd).

■ In addition, a defendant may testify for a limited purpose when the voluntariness of a statement is challenged at a probation revocation hearing. *Masters v. State*, 545 S.W.2d 180, 180–81 (Tex.Crim. App.1977). *Masters* can be harmonized with the general rule and the pretrial exception. A pretrial hearing is generally not held in connection with probation revocation hearings. Voluntariness is an issue for which a pretrial hearing would otherwise be available. *Masters* merely provides the benefits of a pretrial hearing to the more streamlined procedures used in probation revocation hearings.

■ At Harty's revocation hearing, the parties discussed, in an unrecorded bench conference, the issue of whether Harty could testify for a limited purpose. After the bench conference, defense counsel and the trial court summarized the bench conference for the record. According to defense counsel, the State had claimed "[i]n essence the question could be asked as to whether the allegations in the motion are true or not." The trial court's summary, though, is slightly different. The trial court summarized its ruling as follows:

> Just for the record, the defendant who takes the stand to testify, his credibility is always an issue even if he wishes to limit the matter before the court. And accordingly, if he does take the stand in a capacity limited to for instance the voluntariness of his statement, an admission he made on a prior occasion may go to his credibility. I believe that's the position of the State, is it not. . . .

We note the determination of whether a statement is voluntary must be made without regard to the truth or falsity of the statement. *Denno*, 378 U.S. at 376, 84 S.Ct. 1774; *Martinez v. State*, 127 S.W.3d 792, 794–95 (Tex.Crim.App.2004). Provided that, if Harty had taken the stand, he had not gratuitously testified concerning the substance of his prior admissions to the polygraph examiner, but had limited his testimony to the issue of his voluntariness in making them, the State should not have been allowed to question Harty concerning the truth of those admissions. On the other hand, Harty's credibility could have been tested on cross-examination. The record here is not clear concerning the State's intended scope of cross-examination. The trial court's ruling does not explicitly allow the State to inquire into the truth of Harty's admissions to the polygraph examiner. Thus, this record reveals no error as to that ruling.

■ Even if the trial court's ruling could be interpreted as allowing the State to cross-examine concerning the truth of the admissions made during the polygraph examination, no error has been preserved for our review. To preserve error for appellate review, the substance of the excluded evidence must be shown by offer of proof unless it is apparent from the context of the questions asked. Tex.R. Evid. 103(a)(2); Tex.R.App. P. 33.2; *see Fairow v. State*, 943 S.W.2d 895, 897 n. 2 (Tex. Crim.App.1997). Error can be preserved either by an offer of proof in question-and-answer form or in the form of a concise statement by counsel. Tex.R. Evid. 103(b); *Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim.App.1993). If an offer of proof is made in the form of a concise statement, the concise statement must include a reasonably specific summary of the proposed testimony. *Love*, 861 S.W.2d at 901.

Harty's counsel made an offer of proof consisting of the following concise statement:[5]

---

5. Neither the State nor the trial court requested that the offer of proof be made in a ques-

tion-and-answer format. *See* Tex.R. Evid. 103(b); *Tatum v. State*, 798 S.W.2d 569, 572

To preserve the record appropriately and strategically, I have made a decision along with Mr. Harty that he not be called as a witness. But if he would have been called as a witness we would have anticipated his testimony as an offer of proof that he was at the polygraph examiner's office involuntarily, that he gave any statements that were made involuntarily and not of his own free will.

This statement, while concise, set out only the ultimate question counsel intended to answer through Harty's testimony—not any specifics that Harty would testify to. Also, the substance of Harty's testimony is not apparent from the context. Because counsel's concise statement did not offer any summary of Harty's prospective testimony but only a conclusion, any error in setting the scope of cross-examination has not been preserved for our review. We overrule Harty's first point of error.

*(2) No Deception by the State Was Such as Would Either Offend Due Process or Likely Induce an Untrue Statement from Harty*

 Harty also argues that his statements were involuntary. According to Harty, the misrepresentation that the polygraph report would be disclosed only to his therapist was an improper promise and a deception which rendered his confession involuntary. "Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process." *Creager v. State*, 952 S.W.2d 852, 856 (Tex.Crim.App.1997); *Jeffley v. State*, 38 S.W.3d 847, 860 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd).

We examine the two prongs of that test and conclude that the promise—that Harty's polygraph examination report would be made available only to his therapist— did not offend due process and was not likely to influence Harty to make a false statement.

*(a) The Promise Did Not Offend Due Process*

 "In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort." *Haynes v. Washington*, 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (quoting *Wilson v. United States*, 162 U.S. 613, 623, 16 S.Ct. 895, 40 L.Ed. 1090 (1896)). Whether the statement was obtained by coercion or improper inducement must be determined under the totality of the circumstances. *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Haynes*, 373 U.S. at 513, 83 S.Ct. 1336; *Creager*, 952 S.W.2d at 856. A confession is coerced if the defendant's will was overborne by the circumstances surrounding the confession. *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000); *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Creager*, 952 S.W.2d at 856. "A statement is 'involuntary,' for the purposes of federal due process, only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995).[6]

---

(Tex.Crim.App.1990). Thus, a concise statement could have been sufficient.

**6.** We note the Texas Court of Criminal Appeals has held official conduct is not required under Texas law. "While the federal constitution may not be concerned with the voluntariness of confessions obtained by non-government officials, our state legislature is. As an evidentiary matter, no involuntary confession is admissible at trial regardless of the source of the confession." *Alvarado v. State*,

There is no evidence that Harty's admissions were involuntary other than arguments of defense counsel. We find no evidence that Harty's statements would not have been made but for the promise he assails. While the terms of community supervision were introduced into evidence, there is no evidence that the terms misled Harty or improperly induced him to make the admissions used to revoke his community supervision. The terms of community supervision were clearly disclosed to Harty. Under those terms, Harty was required to "execute releases of confidential information permitting free and mutual exchanges of information...." In addition, Harty signed a polygraph consent form which provides,

> I voluntarily consent to this examination of my own free will, and state that no duress, threats, or coercion have been placed upon me to take this examination.... I further understand that the results of my examination will be made available to the agency or investigation officials that requested this examination.

There is no evidence Harty asserted his right to remain silent during the polygraph examination. Harty has failed to show that any deception was sufficient to cause Harty's will to be overborne and, thus, that due process was offended.

*(b) The Promise Was Not Likely to Induce a False Statement*

▇▇▇▇ Whether deception by the State rendered the statements involuntary must be evaluated under the totality of the circumstances. *Creager,* 952 S.W.2d at 856. We reject the argument that the method was calculated to produce an untruthful confession.

▇▇▇▇ Texas law prohibits the use of any confession given by a defendant under the influence of an improper promise. The Texas Court of Criminal Appeals has summarized the rule as including four requirements. "The promise must be: 1) of some benefit to the defendant, 2) positive, 3) made or sanctioned by a person in authority, and 4) of such character as would be likely to influence the defendant to speak untruthfully." *Sossamon v. State,* 816 S.W.2d 340, 345 (Tex.Crim.App.1991); *see Creager,* 952 S.W.2d at 856. The promise in this case is not such as would be likely to influence the defendant to speak untruthfully. To determine whether a promise is likely to influence the defendant to speak untruthfully, "an appellate court must look to whether the circumstances of the promise made the defendant 'inclined to admit a crime he had not committed.'" *Sossamon,* 816 S.W.2d at 345 (quoting *Fisher v. State,* 379 S.W.2d 900, 902 (Tex. Crim.App.1964)). "Under state law the determination is whether the officially sanctioned positive promise 'would be likely to influence the defendant to speak untruthfully' and not whether, the defendant in fact spoke untruthfully." *Martinez,* 127 S.W.3d at 795.

In this case, Harty did not have anything to gain by making false statements, regardless of whether the statements were disclosed to his therapist alone. If the admissions were disclosed only to his therapist, false admissions would have given the therapist incorrect information in formulating Harty's treatment and thus would likely decrease any benefit Harty was receiving from the treatment. If the admissions were disclosed to authorities, false admissions of violations would clearly be against Harty's interest. So, in either

853 S.W.2d 17, 20 (Tex.Crim.App.1993) (citing TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2005)). This opinion assumes, without deciding, that the alleged deception was the result of official conduct.

event, Harty was not influenced to speak untruthfully. *See Smith v. State,* 779 S.W.2d 417, 427–28 (Tex.Crim.App.1989) ("[W]e fail to perceive in what way a 'promise' of a polygraph, without more, would operate to induce an accused falsely to *inculpate* himself.").

We overrule this point of error.

We affirm the trial court's judgment.