

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00038-CR

_____

CALVIN WAYNE BURNHAM, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 123rd Judicial District Court
Panola County, Texas
Trial Court No. 2005-C-0001

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Calvin Wayne Burnham was charged with four counts of aggravated sexual assault and four counts of indecency with a child, his stepdaughter.[1] Pursuant to a plea of guilty on all counts, he was placed on deferred adjudication community supervision for a period of ten years. Burnham appeals the trial court's subsequent revocation of community supervision, adjudication of guilt, and resulting sentence of fifty years' imprisonment for each aggravated sexual assault and twenty years' imprisonment for each count of indecency with a child. He claims that the trial court erred in considering evidence resulting from a polygraph examination, "erred in adjudicating the Appellant guilty based on evidence received at a hearing that had occurred over seven months earlier," and that the evidence was insufficient to demonstrate he violated a condition of his community supervision. We affirm the trial court's judgment.

## I.      Standard of Review

The determination of an adjudication of guilt is reviewable in the same manner as that used to determine whether sufficient evidence supported the trial court's decision to revoke community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon Supp. 2010). While the decision to revoke community supervision rests within the discretion of the trial court, it is not absolute. *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). To revoke community supervision, the State must prove every element of at least one ground for revocation

---

[1]Burnham appeals from this cause number and judgments entered in cause numbers 06-10-00039-CR through 06-10-00045-CR.

2

by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 10 (Vernon Supp. 2010); *T.R.S.*, 115 S.W.3d at 320; *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.). "'Preponderance of the evidence' has been defined as the greater weight and degree of credible testimony." *T.R.S.*, 115 S.W.3d at 320.

In a revocation hearing, the trial judge is the sole trier of the facts and determines the credibility of the witnesses and the weight to be given to the testimony. *T.R.S.*, 115 S.W.3d at 321; *Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.); *Johnson*, 943 S.W.2d at 85. The judge may accept or reject any or all of a witness's testimony. *T.R.S.*, 115 S.W.3d at 321 (citing *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987)). Considering the unique nature of a revocation hearing and the trial court's broad discretion in the proceedings, the general standards for reviewing sufficiency do not apply. *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd). Instead, we review the trial court's decision regarding community supervision revocation for an abuse of discretion and examine the evidence in a light most favorable to the trial court's order. *T.R.S.*, 115 S.W.3d at 321; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Pierce*, 113 S.W.3d at 436. If the State's proof is sufficient to prove any one of the alleged community supervision violations, the revocation should be affirmed. *T.R.S.*, 115 S.W.3d at 321 (citing *Stevens v. State*, 900 S.W.2d 348, 351 (Tex. App.—Texarkana 1995, pet. ref'd)); *Pierce*, 113 S.W.3d at 436.

**II.     Court Could Consider Evidence from Hearing on First Motion to Adjudicate Guilt**

As a preliminary matter, Burnham complains that the trial court improperly considered evidence from a hearing on the State's first amended motion to adjudicate guilt, in which his competency was timely questioned. At the beginning of the hearing, the trial court appointed Dr. Frank S. Murphy to examine Burnham. Due to the requested competency examination, Burnham's counsel told the court he would not be "able to go forward today" and requested a continuance of the hearing. The trial court granted the continuance, but allowed Kelly B. Hendricks, the polygraph examiner, to testify because he had travelled 180 miles to attend the hearing scheduled that day. Counsel was allowed to reserve objections to the testimony. After the hearing, Dr. Murphy concluded that Burnham was competent, but recommended treatment for bipolar disorder, prompting agreement between Burnham and the State to "reset" the hearing for a "status evaluation" at a later date. Prior to the status evaluation, the State filed a second amended motion to adjudicate guilt.

Burnham argues that the trial court erred in considering Hendricks' testimony during the hearing on the first motion to adjudicate, before resolving competency issues. To support his argument, Burnham cites *Rogers v. State.* 640 S.W.2d 248 (Tex. Crim. App. [Panel Op.] 1981). In *Rogers*, the court found the trial court was without authority to subsequently revoke community supervision in the absence of allegations or proof of subsequent violations where it had previously decided to continue the defendant upon community supervision. *Id.* at 252 (op. on reh'g); *Rains v. State*, 678 S.W.2d 308 (Tex. App.—Fort Worth 1984, pet. ref'd) (same). In other words, in the

4

absence of other allegations, a trial court cannot simply change its mind and revoke community supervision once it has decided not to do so. Here, because the revocation hearing was reset pursuant to agreement, and the second amended motion to revoke contained new allegations, *Rogers* does not apply. *Bersuch v. State*, 304 S.W.3d 547, 548 (Tex. App.—Waco 2009, pet. ref'd).

Instead, the Texas Court of Criminal Appeals has held that in a second revocation hearing, a trial judge may take judicial notice of evidence obtained in a prior revocation proceeding, provided that he presided over both hearings. *Torres v. State*, 595 S.W.2d 537 (Tex. Crim. App. [Panel Op.] 1980); *see Cisneros v. State*, 697 S.W.2d 718, 720 (Tex. App.—Corpus Christi 1985, no pet.). The same trial judge presided over both motions to adjudicate guilt. Thus, the trial court did not err in considering evidence obtained at the hearing on the first amended motion when adjudicating guilt based on the State's second amended motion.

### III. Polygraph Results Are Inadmissible

Because of their inherent unreliability and tendency to be unduly persuasive, Burnham is correct in reciting the rule that polygraph examination results are inadmissible for any purpose in a criminal proceeding on proper objection. *See Shiflet v. State*, 732 S.W.2d 622, 630 (Tex. Crim. App. 1985).

There is a question of whether Burnham failed to preserve the point of error. *Jasso v. State*, 112 S.W.3d 805, 813–14 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). We note that

Hendricks was allowed to testify with the court's condition that counsel was able to reserve objections. When Burnham's counsel specifically objected to the admissibility of the polygraph results, the trial court stated, "Again, I'm just giving you, Counsel, an opportunity to see what he's going to say. . . . . You can reserve your objections. . . . . And I'll note it, and you can be subject to making objections at a later time." The results were "received at this time just for the limited purpose of [Hendricks'] testimony."

At the conclusion of the hearing on the second amended motion to adjudicate guilt, in which the State did not offer the polygraph results, Burnham's counsel asked to file a brief with the court addressing concerns that the second amended motion contained allegations not heard at the hearing. The judge referenced Hendricks' testimony and pointed out that he had "heard nothing at the beginning of this that we were having any objection to that evidence coming in." He further stated, "I was satisfied, since I haven't heard anything to the opposite, about the polygraph that was administered and the admissions he made subsequent to that." It is unclear whether the court treated the results of the polygraph as admitted, and whether it treated counsel's request to file a brief as an objection to the results.

Nevertheless, even assuming that the court erroneously admitted the polygraph results over proper objection, because we hold below that the evidence was sufficient to demonstrate violation of at least one condition of community supervision, Burnham was not harmed by its admission. *See* TEX. R. APP. P. 44.2(b); *Anderson v. State*, 182 S.W.3d 914, 918 (Tex. Crim. App. 2006).

6

## IV. Sufficient Evidence Supported the Trial Court's Judgment

The State's second amended motion to adjudicate guilt claimed that Burnham violated the following conditions of community supervision requiring him to: maintain suitable employment; pay an assessed $1,336.00 fine at a rate of $15.00 per month; pay community supervision fees of $50.00 each month; submit to sex offender treatment; and commit to sex offender registration requirements.

At the hearing on the second amended motion to adjudicate guilt, administrative deputy Heather Green testified that although Burnham was required to report any change in job status "[n]ot later than the 7th day after the date of the change," he failed to do so. Shelby and Panola County community supervision officer Heather Brown stated Burnham was laid off on December 3, 2008, and failed to provide income verification until November 2, 2009, indicating Burnham had not worked in almost a year.[2] She claimed Burnham was absent from sex offender treatment meetings.[3] Brown also testified Burnham had failed to pay fines and community supervision fees pursuant to the court's order. Without objection, the State admitted

---

[2]Burnham argues that his condition of community supervision did not require him to maintain suitable employment if searching for a job. The condition required him to "[m]aintain suitable employment or educational/vocational status; [i]f unemployed and not a student, comply with the instructions of the Supervision Officer concerning employment search, education or training, including providing documentation of such activities." Though the officer testified Burnham "had tried" to find employment, the court was free to conclude his one-year hiatus from employment of any sort constituted noncompliance with the condition.

[3]After Brown testified without objection that Burnham failed to attend sex offender treatment classes, she was asked what dates he failed to attend. Because Brown referred to the "records" to determine these dates, Burnham lodged a hearsay objection for lack of "direct knowledge."

7

documentation of Burnham's failure to pay, showing arrearages in each case of between $75.00–$185.00, totaling $1,140.00, and administrative notes suggesting Burnham was sent several "failure to pay" notices.[4]

Most importantly, the State also claimed that Burnham violated the conditions of community supervision requiring him to: avoid injurious or vicious habits, including abstaining from the possession or use of all intoxicating beverages and all unlawful possession of alcohol; refrain from frequenting places where pornographic materials are sold; refrain from possessing recorded materials for the purpose of deviant sexual arousal; avoid contact with the victim's family; and stay 500 feet from any school.

"[T]he 'result' of a polygraph examination is the conclusion based on the machine's graphic indications as to whether the defendant was lying or telling the truth." *Marcum v. State*, 983 S.W.2d 762, 766 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (citing *Castillo v. State*, 739 S.W.2d 280, 293 (Tex. Crim. App. 1987)). Statements made to a polygraph examiner during such an examination are generally admissible.[5] *Id.*; *Harty v. State*, 229 S.W.3d 849, 851 n.2 (Tex. App.—Texarkana 2007, pet. ref'd); *see Shiflet*, 732 S.W.2d at 623 (statements against interest made while not in custody admissible).

---

[4]Burnham argues that the trial court failed to establish that he was able to pay the fines and fees. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 21(c) (Vernon Supp. 2010). The record demonstrates Burnham was indigent and was unemployed until November 2009.

[5]Burnham's counsel objected "to any statements that were made to the examiner," although the basis for the objection was not stated. He further lodged an objection that the examiner's "total testimony [w]as a violation of Article 38.22." However, because submission to a polygraph examination pursuant to conditions of community supervision is not a custodial interrogation, Article 38.22 does not apply. *Marcum*, 983 S.W.2d at 766.

Hendricks testified that Burnham made several "pre-test" and "post-test" admissions. Specifically, he admitted to: "consuming wine at Olive Garden," viewing "cell phone instant message image photos of girls sending pictures of their breasts and vaginas . . . about 20 to 30 times"; "frequenting several area gas stations or convenience stores that display pornography"; and visiting "his brother's house in the evening when school is out because his brother's house is within 500 feet of a school." The examiner testified Burnham "shop[ped] at the grocery store where the victim's grandmother is the manager," but denied speaking with her. Burnham also "claim[ed] that he ha[d] a prescription for Hydrocodone," and "admit[ted] possession of crystal methamphetamine when he poured his dad's crystal methamphetamine out on the ground once whenever he was trying to help his dad get off crystal meth."

The admissions to Hendricks were sufficient for the trial court to find, in its discretion as sole fact-finder, that Burnham violated at least one condition of his community supervision by a preponderance of the evidence. *See T.R.S.*, 115 S.W.3d at 321. Thus, we affirm the revocation and adjudication of guilt. *Id.*

## V.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

9

Date Submitted:     December 14, 2010
Date Decided:       December 15, 2010

Do Not Publish